**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| OWNUM, LLC, | ) | CASE NO. 1:19-cv-01043-MN |
| | ) | |
| Plaintiff, | ) | JUDGE MARYELLEN NOREIKA |
| | ) | |
| v. | ) | |
| | ) | |
| OWNUM, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**<u>SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT ON BEHALF OF PLAINTIFF OWNUM, LLC</u>**

Dated: March 20, 2020

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**

JENNIFER R. HOOVER (DE No. 5111)
KATE HARMON (DE No. 5343)
222 Delaware Avenue, Suite 801
Wilmington, Delaware 19801-1611
Telephone: 302.442.7010
Facsimile: 302.442.7012
Email: jhoover@beneschlaw.com
       kharmon@beneschlaw.com

**FRANTZ WARD LLP**

James B. Niehaus
200 Public Square, Suite 3000
Cleveland, Ohio 44114
Telephone: 216.515.1611
Email: jniehaus@frantzward.com
*Pro Hac Vice*

*Attorneys for Plaintiff Ownum, LLC*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ........................................................................................................................1

DISCUSSION ................................................................................................................................1

      A.     Defendant's Acquisition of the Ownum.com URL in 2019 is a "Registration" Within the Meaning of 15 U.S.C. § 1125(d)(1)(A)(ii)(I) .........................................1

      B.     Defendant Acted with Bad Faith Intent When it "Registered" the Domain Name ......................................................................................................................4

CONCLUSION..............................................................................................................................7

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Am. Cruise Lines, Inc. v. HMS Am. Queen Steamboat Co. LLC*,
　2017 U.S. Dist. LEXIS 130430 (D. Del. 2017) ................................................................... 3, 7

*Coca-Cola Co. v. Purdy*,
　382 F.3d 774 (8th Cir. 2004) ................................................................................................... 6

*Comdyne I, Inc. v. Corbin*,
　908 F.2d 1142 (3d Cir. 1990) ................................................................................................... 2

*Ford Motor Co. v. Catalanotte*,
　342 F.3d 543 (6th Cir. 2003) ................................................................................................... 2

*Gioconda Law Grp. PLLC v. Kenzie*,
　941 F. Supp. 2d 424 (S.D.N.Y. 2013) ..................................................................................... 6

*GlobalSantaFe Corp. v. Globalsantafe.com*,
　250 F. Supp. 2d 610 (E.D. Va. 2003) ...................................................................................... 7

*Harrods Ltd. v. Sixty Internet Domain Names*,
　302 F.3d 214 (4th Cir. 2002) ................................................................................................... 4

*Joe Hand Promotions, Inc. v. Yakubets*,
　3 F. Supp. 3d 261 (E.D. Pa. 2014) ........................................................................................... 2

*Jysk Bed'N Linen v. Dutta-Roy*,
　810 F.3d 767 (11th Cir. 2015) ................................................................................................. 3

*Lucas Nursery & Landscaping, Inc. v. Grosse*,
　359 F.3d 806 (6th Cir. 2004) ................................................................................................... 4

*People for Ethical Treatment of Animals v. Doughney*,
　263 F.3d 359 (4th Cir. 2001) ................................................................................................... 6

*Pinehurst, Inc. v. Wick*,
　256 F. Supp. 2d 424 (M.D.N.C. 2003) .................................................................................... 7

*Schmidheiny v. Weber*,
　319 F.3d 581 (3d Cir. 2003) ................................................................................................ 2, 3

*Target Adver., Inc. v. Miller*,
　2002 U.S. Dist. LEXIS 8702 (S.D.N.Y. 2002) ........................................................................ 6

*Virtual Works, Inc. v. Volkswagen of Am., Inc.*,
　238 F.3d 264 (4th Cir. 2001) ................................................................................................... 4

**Statutes**

Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)................................. *passim*

**Other Authorities**

H.R. Rep. No. 106-412 (1999)..........................................................................................1

http://www.nursetimer.com/home ....................................................................................6

https://support.squarespace.com/hc/en-us/articles/115002531508..................................3

S. Rep. No. 106-140 (1999)...............................................................................................1

**INTRODUCTION**

Plaintiff Ownum, LLC ("Plaintiff" or "Ownum, LLC"), by and through undersigned counsel, pursuant to the telephonic hearing before the Court on February 28, 2020 (the "Hearing"), hereby submits this *Supplemental Memorandum*[1] (the "Supplemental Memo") in support of the *Motion for Default Judgment of Plaintiff Ownum, LLC* (the "Motion") and the original *Memorandum* (the "Original Memo") in support thereof filed on September 18, 2019 [D.I. 19].

Plaintiff is filing this Supplemental Memo to:

    A.    Address the meaning of the term "registration" in 15 U.S.C. § 1125(d)(1)(A)(ii)(I);

    B.    More fully articulate the basis for a determination that Defendant Ownum, Inc. ("Defendant") has a bad faith intent to profit from Ownum.com (the "Domain Name"); and,

    C.    Submit a revised form of Order that complies with Rule 65(D) and which removes the request for injunctive relief related to the CHAMPS Title mark.

**DISCUSSION**

**A.    Defendant's Acquisition of the Ownum.com URL in 2019 is a "Registration" Within the Meaning of 15 U.S.C. § 1125(d)(1)(A)(ii)(I).**

The Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) (the "ACPA") was enacted in 1999 in response to concerns over the practice of registering "well-known brand names as Internet domain names" to force the rightful owners of the marks "to pay for the right to engage in electronic commerce under their own brand name." S. Rep. No. 106-140, at 5 (1999); *see also* H.R. Rep. No. 106-412, at 5-7 (1999). "Registering a famous trademark as a domain name and then offering it for sale to the trademark owner is exactly the wrong Congress intended

---

[1] This Supplemental Memo is to address the issues raised by the Court during the Hearing. Plaintiff hereby incorporates the Original Memo as though fully set forth herein.

to remedy when it passed the ACPA." *Ford Motor Co. v. Catalanotte*, 342 F.3d 543, 549 (6th Cir. 2003).

In the present case, a question has been raised as to what the ACPA means when it imposes liability on someone who, with a bad faith intent to profit from a distinctive trademark, registers, traffics in, or uses a domain name that "*in the case of a mark that is distinctive at the time of registration of the domain name*, is identical or confusingly similar to that mark." 15 U.S.C. § 1125(d)(1)(A)(ii)(I) (emphasis added). More specifically, the question is whether the Defendant in this case can be liable if the Domain Name was originally registered before the Plaintiff's Ownum mark became distinctive. The Third Circuit has answered that very question in *Schmidheiny v. Weber*, 319 F.3d 581, 583 (3d Cir. 2003). In that case, the Third Circuit ruled:

> in March 2000, the named registrant for schmidheiny.com was "Weber Net" and the domain name registrar was Network Solutions, Inc. * * * In June 2000, a new registrant, Famology.com, contractually bound itself in a new registration agreement with a new registrar, Internet Names Worldwide, to secure the schmidheiny.com domain name for a new one-year period. * * * We hold that the word "registration" includes a new contract at a different registrar and to a different registrant.

*Schmidheiny, supra,* 319 F.3d at 583.

In the present case, the Domain Name was originally registered on April 30, 2013 by Lloyd Nurse (with an address in Decatur, Georgia) and the Domain Name registrar was 1&1 Internet, Inc. *See* response received to a subpoena served on 1&1 Internet, attached hereto as **Exhibit A**.[2] In February 2019, Defendant acquired the rights to the Domain Name and became the registrant with a new registrar. *See* Exhibit A to the Original Memo. Although the new registrar is Tucows,

---

[2] In ruling on a motion for default judgment, the Court "accepts as true the well-pleaded factual allegations in the plaintiff's complaint, except those relating to damages, as though they were admitted or established by proof, *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990), as well as all reasonable inferences that can be drawn from the complaint." *Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261, 270 (E.D. Pa. 2014). In addition, the Court may consider "affidavits or other evidentiary materials." *Id.* at 271, n.8.

Inc., Defendant utilized Squarespace.com to initiate the transfer of the Domain Name from 1&1 Internet to Tucows. *Id.* To do so, Defendant had to accept Squarespace's terms of service, thereby creating a new contract with a new registrar for a different registrant. *See* https://support.squarespace.com/hc/en-us/articles/115002531508. In other words, in February 2019, Defendant (a different registrant) entered into a new contract with a different registrar (Tucows/Squarespace) relating to the Domain Name. According to the Third Circuit in *Schmidheiny*, "registration" includes a new contract at a different registrar and to a different registrant. *Id.; see also Jysk Bed'N Linen v. Dutta-Roy*, 810 F.3d 767, 778 (11th Cir. 2015) ("It would be nonsensical to exempt the bad-faith re-registration of a domain name simply because the bad-faith behavior occurred during a noninitial registration, thereby allowing the exact behavior that Congress sought to prevent."); *Am. Cruise Lines, Inc. v. HMS Am. Queen Steamboat Co. LLC*, 2017 U.S. Dist. LEXIS 130430, *34 (D. Del. 2017) ("Consistent with the purpose and text of the Act, re-registration is a qualifying registration for liability. Thus, distinctiveness and bad faith can be determined at the time of any of the re-registrations, including Defendant's most recent extension of the domain name registration.") Thus, Defendant's acquisition of the Domain Name in February 2019 is a "registration" within the meaning of 15 U.S.C. § 1125(d)(1)(A)(ii)(I).

Moreover, the USPTO issued a Notice of Allowance for the OWNUM mark on January 15, 2019 (the "Notice of Allowance"). Complaint at ¶12. As the Court in *Am. Cruise Lines, supra,* 2017 U.S. Dist. LEXIS 130430 at *34, noted, if "a mark is federally registered, legal protectability and distinctiveness are presumed," *citing Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F.2d 277, 291 (3d Cir. 1991). Consequently, at the time of Defendant's "registration" of the Domain Name in February 2019, the OWNUM mark was distinctive.

3

### B. Defendant Acted with Bad Faith Intent When it "Registered" the Domain Name

The ACPA sets forth a list of nine factors that the "court may consider" in determining whether Defendant had a "bad faith intent" when it "registered" the Domain Name. 15 U.S.C. § 1125(d)(1)(B). This Court need not consider all the factors when determining whether Defendant acted in bad faith. *Virtual Works, Inc. v. Volkswagen of Am., Inc.*, 238 F.3d 264, 269 (4th Cir. 2001). "There is no simple formula for evaluating and weighing these factors. For example, courts do not simply count up which party has more factors in its favor after the evidence is in." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 234 (4th Cir. 2002). "The factors are given to courts as a guide, not as a substitute for careful thinking about whether the conduct at issue is motivated by a bad faith intent to profit." *Lucas Nursery & Landscaping, Inc. v. Grosse*, 359 F.3d 806, 810 (6th Cir. 2004). A Court should look to the totality of the circumstances when determining whether a registration of a domain name was motivated by a bad faith intent to profit from an owner's mark.

An analysis of the nine factors supports a conclusion that Defendant acted in bad faith. The first factor is whether Defendant has any "trademark or other intellectual property rights . . . in the domain name." 15 U.S.C. § 1125(d)(1)(B)(I). Defendant only started to use the Ownum name and the Ownum mark to identify its business and its goods in the first quarter of 2019 (Complaint at ¶34) - well after Plaintiff filed its application to register Ownum as its trademark and well after Plaintiff had begun to use the Ownum mark. To the extent Defendant would seek to claim that it has intellectual property rights in the Domain Name, those rights would be junior to Plaintiff's rights. This factor, therefore, weighs in favor of a finding of bad faith.

The second factor is "the extent to which the domain name consists of the legal name of the person." 15 U.S.C. § 1125(d)(1)(B)(II). Although Defendant's name is Ownum, Inc. and the

4

domain is Ownum.com, Defendant once again did not begin using the name Ownum, Inc. until after the Notice of Allowance. Complaint at ¶¶12, 34. Defendant cannot avoid the consequences of the ACPA by adopting a distinctive mark as its corporate name. This factor weighs in favor of a finding of bad faith.

The third factor is Defendant's "**prior use**, if any, of the domain name in connection with the bona fide offering of any goods or services." 15 U.S.C. § 1125(d)(1)(B)(III) (emphasis added). Once again, it is important to note that Defendant did not begin to use the Domain Name (or even the corporate name Ownum, Inc.) until **after** the Notice of Allowance. Complaint at ¶¶12, 34. Thus, to the extent it was offering goods or services in connection with the Domain Name, that use was not a "prior use." This factor weighs in favor of a finding of bad faith.

The fourth factor is whether Defendant has made a "bona fide noncommercial or fair use of the mark in a site accessible under the domain name." 15 U.S.C. § 1125(d)(1)(B)(IV). There is no evidence suggesting that Defendant is making any "noncommercial or fair use of the mark." This factor, therefore, is not relevant in this matter.

The fifth factor is whether Defendant intended to "divert consumers from" Plaintiff's "online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site." 15 U.S.C. § 1125(d)(1)(B)(V). Intent, of course, is difficult to prove, especially on a motion for default judgment when the Plaintiff has not had the opportunity to conduct full discovery. Nevertheless, the facts in this case allow an inference of wrongful intent. Defendant adopted its corporate name and acquired the Domain Name **after** the Notice of Allowance. Complaint at ¶¶12, 34. Although an apparent affiliate of Defendant had already been

offering the goods on a different website (see http://www.nursetimer.com/home, which, according to WHOIS, was created in August 2011), Defendant nevertheless constructed its website to sell the same goods on the Domain Name, but only did so **after** the Notice of Allowance. Complaint at ¶¶12, 34. It is reasonable to infer that Defendant did so to take advantage of the significant publicity being generated by Plaintiff. In fact, Defendant has diverted customers from Plaintiff's website to Defendant's website. *See* Complaint at ¶39. This factor weighs in favor of a finding of bad faith.

The Sixth factor is whether Defendant offered to "transfer, sell, or otherwise assign the domain name" to Plaintiff "for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services." 15 U.S.C. § 1125(d)(1)(B)(VI). Defendant offered to sell the Domain Name to Plaintiff for $1 Million. Complaint ¶43. Courts have found that an extortionate demand is sufficient to demonstrate a "bad faith intent to profit." *See, e.g., Coca-Cola Co. v. Purdy*, 382 F.3d 774, 786 (8th Cir. 2004) (finding that offer to stop using Washington Post domain names in exchange for space on the editorial page in that newspaper was evidence of bad faith intent to profit); *People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 368 (4th Cir. 2001) (defendant's suggestion that mark owner "make him a [settlement] offer" instead of suing him regarding the domain name in question satisfied the intent to profit requirement); *Gioconda Law Grp. PLLC v. Kenzie*, 941 F. Supp. 2d 424, 437 (S.D.N.Y. 2013) (suggesting that "an extortionate demand" might establish bad faith intent to profit under the ACPA); *Target Adver., Inc. v. Miller*, 2002 U.S. Dist. LEXIS 8702 (S.D.N.Y. 2002) (clearest case for a finding of bad faith intent to profit arises when a defendant "register[s] a domain name of an established entity" and then "offer[s] to sell the domain name to the entity at an exorbitant price"). This factor weighs in favor of a finding of bad faith.

6

The seventh factor is whether Defendant provided any "material and misleading false contact information when applying for the registration of the domain name," whether Defendant intentionally failed to "maintain accurate contact information" or whether Defendant engaged in "prior conduct indicating a pattern of such conduct." Plaintiff has no evidence to address this factor. This factor is either neutral or weighs against a finding of bad faith.

The eighth factor is whether Defendant acquired "multiple domain names" which "are identical or confusingly similar to" marks of others. Plaintiff has no evidence to address this factor. This factor is either neutral or weighs against a finding of bad faith.

The ninth factor is "the extent to which" OWNUM is or is not distinctive. As noted above, the Notice of Allowance raises the presumption of distinctiveness. *Am. Cruise Lines, supra,* 2017 U.S. Dist. LEXIS 130430 at *34. This factor weighs in favor of a finding of bad faith.

Accordingly, after a holistic application of the nine factors to Defendant's conduct in this matter, it is clear that Defendant had a "bad faith intent" when it "registered" the Domain Name. 15 U.S.C. § 1125(d)(1)(B).

## CONCLUSION

Pursuant to 15 U.S.C. § 1125(d)(2)(D), the remedies for a violation of the Anticyberquatting Consumer Protection Act are "forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark." *See Pinehurst, Inc. v. Wick*, 256 F.Supp.2d 424, 432 (M.D.N.C.2003) (ordering the transfer of identical or confusingly similar domain names to the plaintiff and permanently enjoining the defendant from using identical or confusingly similar terms); *GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F.Supp.2d 610, 617 (E.D.Va.2003) (holding that "it is unmistakably clear that both transfer and cancellation are proper remedies under the statute").

Based on the foregoing, this Court should enter a default judgment against Defendant and issue an Order transferring the Domain Name to Ownum, LLC and permanently enjoining Defendant from using the Domain Name and any variation thereof that is confusingly similar to OWNUM.  A Proposed Order with findings of fact is attached.[3]

|  |  |
|---|---|
|  | **BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP** |
| Dated: March 20, 2020 | /s/ Jennifer R. Hoover |
|  | Jennifer R. Hoover (DE No. 5111) |
|  | Kate Harmon (DE No. 5343) |
|  | 222 Delaware Avenue, Suite 801 |
|  | Wilmington, Delaware 19801-1611 |
|  | Telephone: 302.442.7010 |
|  | Facsimile: 302.442.7012 |
|  | Email: jhoover@beneschlaw.com |
|  | kharmon@beneschlaw.com |

**FRANTZ WARD LLP**

James B. Niehaus
200 Public Square, Suite 3000
Cleveland, Ohio 44114
Telephone: 216.515.1611
Email: jniehaus@frantzward.com
*Pro Hac Vice*

*Attorneys for Plaintiff Ownum, LLC*

---

[3] Plaintiff has removed the request for attorneys' fees included in the Motion and Original Memo.

## **CERTIFICATE OF SERVICE**

A true and accurate copy of the foregoing was filed in accordance with this Court's electronic filing system, and a copy was served via Certified U.S. Mail, return receipt requested, this 20th day of March, 2020 upon the foregoing:

Ownum, Inc.
c/o The Incorporating Company, LLC
2035 Sunset Lake Road #B203
New Castle, DE 19720

                                                   */s/ Jennifer R. Hoover*
                                                   One of the Attorneys for Ownum, LLC