UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| OWNUM, LLC, ) | CASE NO. 1:19-cv-01043-MN |
| ) | |
| Plaintiff, ) | JUDGE MARYELLEN NOREIKA |
| ) | |
| v. ) | |
| ) | |
| OWNUM, INC., ) | |
| ) | |
| Defendant. ) | |

## JUDGMENT ENTRY AND ORDER

This matter came before the Court on the motion (the "Motion")[1] of Plaintiff Ownum, LLC ("Ownum, LLC" or "Plaintiff") for judgment by default against Defendant Ownum, Inc. ("Defendant" or "Ownum, Inc.") and original *Memorandum* and *Supplemental Memorandum* in support of the Motion. The docket in this matter shows that Defendant was properly served with the Complaint and Summons and that Defendant failed to answer or otherwise defend. As a result of Defendant's failure to respond to the Complaint, the factual allegations are deemed admitted. Fed. R. Civ. P. 8(b)(6); *see also Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261, 270 (E.D. Pa. 2014) ("In ruling on a motion for default judgment, the Court "accepts as true the well-pleaded factual allegations in the plaintiff's complaint, except those relating to damages, as though they were admitted or established by proof, *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990), as well as all reasonable inferences that can be drawn from the complaint."). In addition, the Court may consider "affidavits or other evidentiary materials" offered in support of the motion. *Joe Hand Promotions, Inc.,* 3 F. Supp. 3d at 271, n.8.

---

[1] All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion and supporting documents.

13234966 v2

Upon review of the Complaint in this matter and the additional information submitted in support of Plaintiff's Motion, including the Original Memo and the Supplemental Memo, this Court finds as follows:

1. Ownum, LLC is an Ohio limited liability company with its principal place of business in Cleveland, Ohio. Ownum, LLC is a technology company in the business of developing software products and services based on distributed ledger technologies, also known as blockchain technologies.

2. Ownum, LLC has been using the name "Ownum" and the "OWNUM" mark in commerce since May 2018 and has invested heavily in publicizing both.

3. On May 29, 2018, Ownum, LLC filed to register "OWNUM" as a trademark with the United States Patent and Trademark Office. On January 15, 2019, the USPTO issued a Notice of Allowance for the OWNUM mark (the "Notice of Allowance"). The OWNUM mark has issued and bears Registration Number 5863906. The goods and services to which the mark will apply are described as:

> Software as a service (SAAS) featuring software employing blockchain technology with smart contracts to support business and government operations, in the field of state motor vehicle, boat, trailer, recreational vehicle, and personal watercraft titling; Platform as a service (PAAS) featuring software employing blockchain technology with smart contracts to support business and government operations, in the field of state motor vehicle, boat, trailer, recreational vehicle, and personal watercraft titling.

4. From July 19, 2018 through the present, Ownum, LLC engaged in numerous discussions with governmental and non-governmental entities with respect to the implementation and deployment of its products and services including, without, limitation, required data mapping activities necessary for the implementation and deployment of its products and services.

5. As a result of Ownum, LLC's investment in publicizing its name and its goods and services and the widespread publicity Ownum, LLC has received, the relevant public has come to associate the Ownum name and the OWNUM mark with Ownum, LLC as being the source or origin of its products and services.

6. Defendant is a Delaware corporation. Defendant owns the "ownum.com" domain (the "Domain Name") and operates a website at that address that sells products and utilizes software to manage medications.

7. Defendant's use of the Domain Name has and is likely to continue to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with Ownum, LLC.

8. Defendant's adoption of Defendant's Mark is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with Ownum, LLC.

9. Defendant's use of the Domain Name has and is likely to continue to cause confusion, or to cause mistake, or to deceive as to the source of Defendant's goods, services, or commercial activities as Ownum, LLC, or as to the sponsorship, or approval of Defendant's goods, services, or commercial activities by Ownum, LLC.

10. Defendant's adoption of Defendant's Mark is likely to cause confusion, or to cause mistake, or to deceive as to the source of Defendant's goods, services, or commercial activities as Ownum, LLC, or as to the sponsorship, or approval of Defendant's goods, services, or commercial activities by Ownum, LLC.

11. Members of the relevant public who become familiar with Ownum, LLC will likely first visit the Domain Name in an attempt to learn more information about Ownum, LLC. Upon

visiting that site, they will be presented with products and related software that are being marketed to assist patients to manage their medications. Members of the relevant public have been and will likely be misled into believing that Ownum, LLC has expanded its products and services to also sell products and use software to assist patients to manage their medications.

12. Defendant's Domain Name is confusingly similar to the OWNUM mark.

13. In the present case, the Domain Name was originally registered on April 30, 2013 by Lloyd Nurse (with an address in Decatur, Georgia) and the Domain Name registrar was 1&1 Internet, Inc. In February 2019, Defendant acquired the rights to the Domain Name and became the registrant with a new registrar. Although the new registrar is Tucows, Inc., Defendant utilized Squarespace.com to initiate the transfer of the Domain Name from 1&1 Internet to Tucows. *Id.* To do so, Defendant had to accept Squarespace's terms of service, thereby creating a new contract with a new registrar for a different registrant. *See* https://support.squarespace.com/hc/en-us/articles/115002531508. Therefore, in February 2019, Defendant (a different registrant) entered into a new contract with a different registrar (Tucows/Squarespace) regarding the Domain Name.

14. Defendant only started to use the Ownum name and the Domain Name to identify its business and its goods in the first quarter of 2019, after Plaintiff had begun using the OWNUM mark filed its application to register Ownum as its trademark and well after Plaintiff had begun to use the Ownum mark. To the extent Defendant would seek to claim that it has intellectual property rights in the Domain Name, those rights are junior to Plaintiff's rights.

15. Although Defendant's name is Ownum, Inc. and the Domain Name is ownum.com, Defendant did not begin using the name Ownum, Inc. until after the Notice of Allowance.

16. Defendant's use of the Domain Name is for commercial purposes and is not a fair use of Ownum, LLC's OWNUM mark.

17. Although Defendant has been marketing products and related software that are intended to assist patients to manage their medications on the ownum.com website, an apparent affiliate of Defendant had already been offering those goods and software on a different website, http://www.nursetimer.com/home, which was created in August 2011. Defendant nevertheless constructed its ownum.com website to sell the same goods, but did so after the Notice of Allowance.

18. Defendant has demanded that Ownum, LLC pay it $1 Million for the Domain Name. Defendant is aware of Ownum, LLC's rights in and to the OWNUM mark and that members of the relevant public are likely to visit the Domain Name in their efforts to learn more about Ownum, LLC, and Defendant is relying on that likelihood in an effort to profit from its use of the Domain Name.

19. There is no evidence that Defendant submitted any material and misleading false contact information when applying for the registration of the Domain Name or that Defendant has registered "multiple domain names" which "are identical or confusingly similar to" marks of others.

On the basis of the foregoing, the Court concludes as follows:

1. "[E]ntry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984). The Third Circuit uses a three-part test to determine if default judgment is proper:

(1) prejudice to the plaintiff if default is denied,

(2) whether the defendant appears to have a litigable defense, and

(3) whether defendant's delay is due to culpable conduct.

*J & J Sports Prod. v. M&I Hosp. of Delaware, Inc.*, 2018 U.S. Dist. LEXIS 196646 at *4-5 (D. Del. Nov. 19, 2018) (*quoting Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000)); and *Skeway v. China Natural Gas, Inc.*, 2015 U.S. Dist. LEXIS 10830 at *1 (D. Del. Jan. 30, 2015). In the present case, Plaintiff will be prejudiced if Defendant is permitted to continue to misuse the Domain Name and the OWNUM mark. Defendant is aware of this action and has had more than ample time to appear and defend. Its failure to do so supports the conclusion that it does not have a defense, and that its delay is culpable.

    2.    In this action, Ownum, LLC seeks injunctive relief to (a) enjoin Defendant from further use of the Domain Name and any variation thereof which would be confusingly similar to the OWNUM Mark and (b) require Defendant to transfer to Ownum, LLC ownership and control of the Domain Name.

    3.    To obtain a permanent injunction, Ownum, LLC must show that (a) it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between Ownum LLC and Defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *See Cordance Corp. v. Amazon.com, Inc.*, 730 F. Supp. 2d 333, 337 (D. Del. 2010).

    4.    In *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 726 (3d Cir. 2004), the Third Circuit ruled that:

> "Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of good will." *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir. 1998). Lack of control over one's mark "creates the potential for damage to . . . reputation[, which] constitutes irreparable injury for the purpose of granting a preliminary injunction in a trademark case." *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 196 (3d Cir. 1990). Thus, "trademark infringement amounts to irreparable injury

as a matter of law." *S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 378 (3d Cir. 1992); *see also Times Mirror Magazines, Inc. v. Las Vegas Sports News, L.L.C.*, 212 F.3d 157, 169 (3d Cir. 2000) ("potential damage to . . . reputation or goodwill or likely confusion between parties' marks" is irreparable injury). "Once the likelihood of confusion caused by trademark infringement has been established, the inescapable conclusion is that there was also irreparable injury." *Pappan*, 143 F.3d at 805.

In this case, Ownum, LLC has established that Defendant's use of the Domain Name will infringe the OWNUM mark. Ownum, LLC, therefore, has established irreparable harm.[2]

5. The evidence also supports the conclusion that monetary damages are insufficient to compensate Ownum, LLC for the confusion that will occur as a result of Defendant's continued operation of the Domain Name.

6. As between the parties, Plaintiff has demonstrated that it will suffer hardship if the injunction is not granted, but the existence of a separate website operated by an affiliate of Defendant that sells the same goods demonstrates that Defendant will not be harmed by the entry of an injunction.

7. Finally, as demonstrated by Congress' enactment of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) (the "ACPA"), the issuance of an injunction in this case will be in the public interest. See 15 U.S.C. § 1125(d)(2)(D); *see also Pinehurst, Inc. v. Wick*, 256 F. Supp. 2d 424, 432 (M.D.N.C. 2003) (ordering the transfer of identical or confusingly similar domain names to the plaintiff and permanently enjoining the defendant from using identical or confusingly similar terms); *GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 617

---

[2] This case differs from *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205 (3d Cir. 2014) because Ownum, LLC is not asking this Court to presume irreparable harm based on a likelihood of success on the merits. Ownum, LLC has succeeded on the merits and has shown that it will be irreparably harmed by Defendant's continued use of ownum.com.

(E.D. Va.2003) ("it is unmistakably clear that both transfer and cancellation are proper remedies under the statute")

8. Under the ACPA, Defendant may be held liable in this action if Defendant "registers, traffics in, or uses a domain name that . . . in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark" if Defendant also has "a bad faith intent to profit from that mark." *See* 15 U.S.C. § 1125(d)(1)(A)(ii)(I).

9. In *Schmidheiny v. Weber*, 319 F.3d 581, 583 (3d Cir. 2003), the Third Circuit ruled that "registration" includes a new contract at a different registrar and to a different registrant. *Id.; see also Jysk Bed'N Linen v. Dutta-Roy*, 810 F.3d 767, 778 (11th Cir. 2015) ("It would be nonsensical to exempt the bad-faith re-registration of a domain name simply because the bad-faith behavior occurred during a noninitial registration, thereby allowing the exact behavior that Congress sought to prevent."); *Am. Cruise Lines, Inc. v. HMS Am. Queen Steamboat Co. LLC*, 2017 U.S. Dist. LEXIS 130430, *34 (D. Del. 2017) ("Consistent with the purpose and text of the Act, re-registration is a qualifying registration for liability. Thus, distinctiveness and bad faith can be determined at the time of any of the re-registrations, including Defendant's most recent extension of the domain name registration.") Thus, Defendant's acquisition of the Domain Name in February 2019 is a "registration" within the meaning of 15 U.S.C. § 1125(d)(1)(A)(ii)(I).

10. In in *Am. Cruise Lines, supra,* 2017 U.S. Dist. LEXIS 130430 at *34, this Court noted that if "a mark is federally registered, legal protectability and distinctiveness are presumed," *citing Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F.2d 277, 291 (3d Cir. 1991). Consequently, at the time of Defendant's "registration" of the Domain Name in February 2019, the OWNUM mark was distinctive.

11. The ACPA sets forth a list of nine factors that the "court may consider" in determining whether Defendant had a "bad faith intent" when it "registered" the Domain Name. 15 U.S.C. § 1125(d)(1)(B). Those nine factors are:

(i) the trademark or other intellectual property rights of the person, if any, in the domain name;

(ii) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

(iii) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

(iv) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

(v) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(vi) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(vii) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(viii) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(ix) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c).

15 U.S.C. § 1125(d)(1)(B).

12. This Court need not consider all the factors when determining whether Defendant acted in bad faith. *Virtual Works, Inc. v. Volkswagen of Am., Inc.*, 238 F.3d 264, 269 (4th Cir. 2001). "There is no simple formula for evaluating and weighing these factors. For example, courts do not simply count up which party has more factors in its favor after the evidence is in." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 234 (4th Cir. 2002). "The factors are given to courts as a guide, not as a substitute for careful thinking about whether the conduct at issue is motivated by a bad faith intent to profit." *Lucas Nursery & Landscaping, Inc. v. Grosse*, 359 F.3d 806, 810 (6th Cir. 2004). A Court should look to the totality of the circumstances when determining whether a registration of a domain name was motivated by a bad faith intent to profit from an owner's mark.

13. An analysis of the nine factors supports a conclusion that Defendant acted in bad faith. Factors one through three relate to whether the Defendant acquired any legitimate rights in the Domain Name before the mark became distinctive. In this case, because Defendant did not "register" or begin to use the Domain Name until after the Notice of Allowance, these factors weigh in favor of a finding of bad faith.

14. Factor four is not applicable in this case and the Court has no evidence relating to factors seven and eight. Thus, the Court cannot determine whether they weigh in favor of or against a finding of bad faith.

15. Defendant adopted its corporate name and acquired the Domain Name **after** the Notice of Allowance. Although an apparent affiliate of Defendant had already been offering the goods on a different website (see http://www.nursetimer.com/home, which, according to WHOIS, was created in August 2011), Defendant nevertheless constructed its website to sell the same goods on the Domain Name, but only did so **after** the Notice of Allowance. It is reasonable to infer that

Defendant did so to take advantage of the significant publicity being generated by Plaintiff. In fact, Defendant has diverted customers from Plaintiff's website to Defendant's website. Therefore, factor five weighs in favor of a finding of bad faith.

16. Defendant sought a very substantial payment in exchange for the Domain Name, $1 Million, after using the Domain Name for only a short period of time (less than 90 days). Thus, factor six weighs strongly in favor of a finding of bad faith. An extortionate demand is sufficient to demonstrate a "bad faith intent to profit." *See, e.g., Coca-Cola Co. v. Purdy*, 382 F.3d 774, 786 (8th Cir. 2004) (finding that offer to stop using Washington Post domain names in exchange for space on the editorial page in that newspaper was evidence of bad faith intent to profit); *People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 368 (4th Cir. 2001) (defendant's suggestion that mark owner "make him a [settlement] offer" instead of suing him regarding the domain name in question satisfied the intent to profit requirement); *Gioconda Law Grp. PLLC v. Kenzie*, 941 F. Supp. 2d 424, 437 (S.D.N.Y. 2013) (suggesting that "an extortionate demand" might establish bad faith intent to profit under the ACPA); *Target Adver., Inc. v. Miller*, 2002 U.S. Dist. LEXIS 8702 (S.D.N.Y. 2002) (clearest case for a finding of bad faith intent to profit arises when a defendant "register[s] a domain name of an established entity" and then "offer[s] to sell the domain name to the entity at an exorbitant price").

17. Finally, as noted above, the OWNUM mark is distinctive, so the ninth factor weighs in favor of a finding of bad faith. Accordingly, after a holistic application of the nine factors to Defendant's conduct in this matter, it is clear that Defendant had a "bad faith intent" when it "registered" the Domain Name. 15 U.S.C. § 1125(d)(1)(B).

18.     Pursuant to 15 U.S.C. § 1125(d)(1)(C), this Court is empowered to "order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark."

On the basis of the foregoing, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED that:

1.      Defendant, its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise, see Fed.R.Civ.P. 65(d); *Dentsply Int'l, Inc. v. Kerr Mfg. Co.*, 42 F. Supp. 2d 385, 393-94 (D. Del. 1999), are enjoined from further use of the "www.ownum.com" Domain Name and any variation thereof which would be confusingly similar to the OWNUM Mark.

2.      Within fifteen days of entry of this Order, Defendant, its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise, see Fed.R.Civ.P. 65(d); *Dentsply, supra*, are ordered to transfer ownership and control of the www.ownum.com Domain Name to Ownum, LLC and to transfer the www.ownum.com Domain Name to Ownum, LLC's registrar of choice, pursuant to all rules and regulations of the Internet Corporation for Assigned Names and Numbers ("ICANN").  *See* 15 U.S.C. § 1125(d)(2)(D); *see also Pinehurst, Inc. v. Wick*, 256 F. Supp. 2d 424, 432 (M.D.N.C. 2003) (ordering the transfer of identical or confusingly similar domain names to the plaintiff and permanently enjoining the defendant from using identical or confusingly similar terms); *GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 617 (E.D. Va. 2003) ("it is unmistakably clear that both transfer and cancellation are proper remedies under the statute").

3. To the extent Defendant does not comply with this Order, this Judgment Entry and Order shall be authorization for the current registrar of record of the www.ownum.com Domain Name to transfer the Domain Name to Ownum, LLC and its registrar of choice.

SO ORDERED. FINAL. NO JUST REASON FOR DELAY.

_____    _____
DATE                                                                                JUDGE MARYELLEN NOREIKA